I'm John Ritchie. I'm the attorney for the City of Johnston City. I'm appearing here today for a oral argument, primarily to answer any questions you might have about the case. The law and facts are, I believe, fairly simple. My arguments are in the brief. But was there an agreement to do both the merit court hearing and the arbitration? No. At the time of the merit board hearing, the new collective bargaining agreement had not been signed. That verbiage had not even been written as of the time of the merit board hearing. We were limited in 2007 when the merit board hearing occurred, where we could not have negotiated away the merit board procedure. We were not home rule at the time of the signing of that CBA. We can negotiate it away as a home rule unit, but not as a non-home rule unit. Even if it were in the CBA, to preserve the issues that were decided by the merit board, an appeal had to have been taken under the administrative review law. The administrative decision became final because of the failure to file any document in the nature of objections, protests, or petition for hearing or an application for administrative review within the time allowed. At that point, the merit board was completely done and In all such cases, any other statutory, equitable, or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed. I don't believe we have any further questions. Thank you, counsel. Thank you, sir. Counsel? May it please the court, my name is James Daniels, and I represent the appellees John Warren and the Illinois Fraternal Order of Police Lady Connell. Your Honor, I'd like to focus on the issue of res judicata that the city of Johnson City has brought to your attention. As you know, the argument they have made is that because the union participated in a merit commission hearing before the Fire and Police Commission, that the grievance arbitration that took place was not valid and is in fact barred by the Administrative Review Act and the doctrine of res judicata. And to that end, he's referred to this case, Board of Governors, which was determined by the appellate court in the fourth district. I'd like to bring out an important distinction between that case and this case. In that case, the grievance name was Shelly Brown. She had a labor contract that was negotiated under the Illinois Educational Public Labor Act. And when she registered to be fired, she opted to go the Civil Service Commission route, and then once that was already in place, she then opted to file a grievance. And that Civil Service Commission rule and her arbitration rule, too, but then the court of the fourth district appellate said, no, you are precluded. That arbitration is precluded from overturning the commission's ruling by the doctrine of res judicata. And what they emphasized then, and years later, in a follow-up case, Board of Educators of Rockford, is that her labor contract being negotiated under the Educational Labor Relations Act was specifically subject to section 10 of the Educational Labor Relations Act. And section 10 stated specifically, The parties to the collective bargaining process shall not affect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of or inconsistent with or in conflict with any statute enacted by the General Assembly. So the Educational Labor Act says no contract negotiated under this act can conflict with any statute enacted by the General Assembly. Any other law or act. And therefore, when Shelley Brown said, I'd like to have my labor arbitration as well, they said, no, you're precluded by the doctrine of res judicata because that appellate court said, your rights to grieve arbitration, me perceiver, in conflict with the Administrative Review Act. And obviously, the city has made the same argument that the same thinking should apply here. But here's an important distinction. I've just read what the Educational Labor Relations Act says about their contracts. John Mooney's contract was negotiated not under the Educational Labor Relations Act, but under the Illinois Public Labor Relations Act. And that act, in section 15, says the exact opposite. That act says, in section 15B, any collective bargaining contract between a public employer and labor organization executed pursuant to this act shall supersede any contrary statutes, charters, ordinances, rules, or regulations relating to wages, hours, and conditions of employment and employment relations. It's directly distinguishable from the Educational Public Labor Relations Act. And what it does is it creates a right, when the parties create a contract authorized by that act, to create terms of the contract that have the force of law and that will supersede and take precedent over existing law if that law concerns terms and conditions of employment. So my way to distinguish this case from that of Shelly Brown and the Fourth Health District is being under a different contract, established under a different act. If it is deemed by you to be in conflict, the right to arbitrate discipline, to be in conflict with the administrative review path, then it should nonetheless be given deference in that small way, that the right to grieve discipline should be allowed. And we have to acknowledge two things right now that are indisputable. Both the 2007-2011 contract and the 2011-2013 contract, which was followed, both of them had provisions saying discipline and discharge can only be administered except for just cause. It must be progressive and correct. Both contracts had language in it saying that differences over contract administration can be grieved, with the exception of probationary employees could not grieve their discipline. And John Warren was not probationary. So there's been some discussion as to whether the retroactive contract or the older contract applies. Both of them had language saying employees had a right to grieve differences and disputes over contract interpretation. Now I would urge you further, I don't believe there's a need for this and the labor contract in Johnson City that was in effect at that time. And to that end, I'll point out the Administrative Review Act in section 3-104 says the following. Earlier it says final decisions by an administrative agency should be appealed to the courts. It does say that and that's the heart of the city's case. But then it says this in section 3-104, if the venue of the action to review a final decision is expressly prescribed in the particular statute under authority of which the decision was made, such venue shall control. So it acknowledges that there can be an alternate venue of review if specifically described by the authorizing statute. Well there's two authorizing statutes here. Well there's one, this contract was issued under the Illinois Public Labor Relations Act and it works in tandem with the Fire and Police Commission Act. The Fire and Police Commission Act acknowledges that the parties can have alternate means of resolving labor disputes. The Public Labor Relations Act says every contract will have a grievance procedure to resolve labor under this act shall take precedence over conflicting laws. So I really have two arguments in the alternative here. My primary arguments have nothing to do with the Staple. My primary arguments are one, the Administrative Review Act and the Labor Act and our contract can be harmonized. They do not need to be seen to be in conflict as the 4th District Appellate did. And if you look at that, the Administrative Review Act says specific statutory authorization is acceptable and does not violate this act. And indeed if you look at the way this system worked out, it did not supplant the Merrick Commission rules. It did not supplant the ability to go to the courts. It simply inserted a layer of review between the two because obviously the city was capable of appealing the matter to the courts for review and it's well established that arbitrations can be appealed to the courts and reviewed under certain criteria. So my primary argument is there is no conflict between the Administrative Review Act and the way this arbitration and Merrick Commission hearing fell out. But if however this court were to determine that there is an inherent conflict like the 4th District Appellate did, then my argument is the distinction here between a contract negotiated under the Public Labor Relations Act as opposed to the Educational Labor Relations Act is critical. And it created a right in this case to have that discipline reviewed by an arbitrator. And I would anticipate that on rebuttal, the closing counsel might say, well, if that were the case, then the union should have, as soon as we announced that there was going to be a Merrick Commission hearing, the union should have filed a TRO, a motion to before the hearing. I was the union attorney at that time. And I filed the grievance before the hearing, but it was not right to compel arbitration until he was fired. He wasn't fired at that point. The hearing was set. He was still an employee of theirs. I could not compel a discharge arbitration before he was discharged. And it's true, I could have tried to file a TRO, but to do so successfully, I would have had to show the judge that I had a reasonable success on the merits, not getting this job back. But to tell a court, you must tell Johnson City not to fire him through the Merrick Commission, but make their mayor, make their chief fire him so I can grieve it appropriately. Our contract didn't say that. The contract in place at the time, the 2007 to 2011 contract, did not dictate how the city would fire John Morney. They had fired him in the past. If you believe it, and it's in the record, it went to arbitration. Arbitrator put him back to work. And so this time in 2012, it's in the record that he said, we're going to do it differently this time. We're going to go for our Fire and Police Commission. And I said, we will waive that. The city said, no, we have a right to do it. It's on our ordinance. So this idea that I could have filed a TRO and said, judge, tell them, tell them not to use their Fire and Police Commission. The judge would have realistically said, well, where in your contract, what does it violate in your contract? Well, there's nothing in our current contract, 2007 to 2011, dictate how they would fire John Morney or how they should. And it's important that the Fire and Police Commission Act states that a Fire and Police Commission can't hire, promote, and discharge people. And there can't be labor agreements that work out supplemental or alternative arrangements. This was a supplemental arrangement that we came up with. It's supplemented the system already in place, this Fire and Police Commission. It's uncontroverted in the record. We came to mutual agreement so they could go ahead and have their merit, their police commission hearing so that they couldn't be said to have skipped their own rules. And then I would file a grievance and we would have an arbitration. So I have no reason to file a TRO. I had no reason to try to get some judge to stop this process in its tracks, which on its face was legit. And I couldn't argue that the city had no right to determine the mechanism of discharge. So I had to be reactive in this case. And the record shows that we had discussions as to how this would be handled. And the discussions determined that they would have the merit commission, and then we would have the grievance and the arbitration following. The merit commission hearing did not, thereby they did not violate their own rules established by Fire and Police Commission Act, which enables, and because that act enables the parties to come up with alternative and supplemental methods of resolving disputes, the agreement between us, which is indisputed, to have an arbitration over the results, if adverse, did not violate the Fire and Police Commission Act either. And they were consistent with our contract and therefore the may not be immediately apparent from the pleadings. The Fire and Police Commission has an obligation to consider just cause before they fire someone. It's in the Fire and Police Commission Act. Our contract also said just cause, so those two are parallel. But our contract also states that discipline must be progressive and corrective. The Fire and Police Commission is under no obligation to consider those terms. So in order for the union to enforce those terms, you know, to require the employer to follow its obligations, we would need an arbitrator to review that contract. That's why from the very first, I asserted the fact that we had a right to arbitration. We worked in a relinquishes, and I never gave that up. And opposing counsel of the city of Johnson City never disputed that. And that was the only way we were going to get someone to review and see if the city complied with its obligations to be corrected, i.e. to see if it's corrective behavior and not just punish it, and progressive, i.e. consider his past work history and see if that mitigated in any way the alleged misconduct. So from the very first, there were terms in our contract which we had a right to enforce and which we did assert and enforce with no idea that we would be unable to do this. And to the extent that there's this argument out there that the union should have acted earlier with an injunction, the sword has two edges. This case took 17 months to get to arbitration. Any day of those 17 months, the city could have filed an injunction and said there's no right to go to arbitration because the union has waived its right under the Administrative Review Act, blah, blah, blah. But as we know from the record, they filed the day before the arbitration. And the union only learned, I only learned, about their theory of the case after arbitration on the very day we were going to hear it. And at that hearing, I will point out, there has been some claims in the record that the city didn't participate. But if you look at the record, that hearing did take place. There was counsel for both sides there. And although the city did not present a case in chief, the union put on one witness, myself, who provided testimony, and that witness was cross-examined by the city's attorney. That is participation in the process. And the city's attorney provided the arbitrator with his explanation of why he thought the arbitrator had no jurisdiction. So this idea that the city did not participate in the hearing is not borne out by the record. So when you look at it as a whole, there's a facial similarity. Shelley Brown's grievance under the Educational Labor Relations Act, there's a superficial similarity between what happened to her and what happened here. But I would urge you, when you consider the context and the fact that these contracts arose out of entirely different acts, both of which have entirely different provisions dealing with what happened when there's a conflict between a contractual term and the law, I think you will see at this point that the union never gave up its right under the Labor Act Section 8, which says that all contracts must have a grievance provision to resolve conflicts, never gave up that right, enforced it throughout, and was 100% consistent in that regard. And I think that any argument stating that the union's right to do so were obviated by the timing of it, or by the fact that there was the hearing earlier, or the fact that the circuit court recognized the subsequent contract. All of those arguments fly in the face of the fact that there was a longstanding policy in Illinois, recognized by the Illinois Supreme Court, of allowing labor conflicts to be resolved at labor arbitrations. And so I know that one of the arguments here is since the judge at the circuit court recognized retroactively the subsequent contract, that somehow this removed our right retroactively to go to arbitration. And what I can say to that is this. I think the that the 2011 to 2013 contract was retroactively in effect, because it said it was. The 2011 to 2013 contract stated clearly, this agreement shall be ineffective from August 1, 2011, and remain in full force in effect till July 31, 2013. Obviously, John Mooring was fired in December of 12. This contract was signed one month later. One month later, all right. This new contract did not impact John Mooring's right to grieve discipline either way. The lower court correctly held that it was the relevant one, because it was retroactive. But keep in mind, both this contract and the earlier one said discipline only for just cause. And both of them said you can grieve any differences over opinion, over contract interpretation. And he had grieved under the old contract and gone to arbitration. So this contract did not give him any right he didn't have previously. What it did, when you look at it, it prevents in the future there being this duplicative process. It creates a very clear venue selection. But it also contains the language stating that the party shall not in any case have a mere commission hearing and arbitration. And I know in opposing counsel's brief, he makes the argument, says, well, if that contract's retroactive, what's good for the goose is good for the gander. Doesn't that just wipe away the union's right and John Mooring's right to have both a mere commission hearing and an arbitration? To that argument, I would say this. The record is clear and undisputed that the parties mutually worked out a supplemental and alternative method of litigating his discharge that allowed both the city's ordinance and our labor contract to be honored and have full effect. That process was agreed to and in motion before this 2013 contract was signed. This 2011 to 2013 contract's prospective effect is obvious. No one will be in the position we are in the future, in Charleston City anyway. The argument made by counsel that it retroactively wiped out our rights to arbitration, I would present two arguments against that. The first is the actions of the parties. We came to an agreement. I've argued in my brief there was consideration and there was mutual agreement. We understood each other. I've described the gave up our time and our effort and our money to make sure both parties got something they wanted and our actions do not reflect parties who have agreed to retroactively wipe out one party's of any one appeal. And second, I would argue again that because in Illinois there is a policy allowing labor arbitration to resolve labor issues, I would argue that the burden is on the employer to show that this provision in the contract, the retroactivity provision, was intended to obviate this case, to do away with any future litigation. It would have been very easy at the circuit court hearing or at the labor arbitration to bring someone who negotiated that contract and said we put that in there so that we wouldn't have to deal with this case going to arbitration again. That could have been done quite easily. I would argue the burden is on them. That was not done at any point. There was no case in chief made at the arbitration and at the circuit court level. That theory was never advanced. Thank you very much. The first argument. I get to keep some of it? I thought I was down to five. Anyway, a number of things. We did have an agreement that we would go forth and if they wanted to have an arbitration later, they could have had they kept the decision by the merit board from becoming final. They did not appeal it as they must for it to speak or it will become final. It did become final. It is done. Various parts of the argument made by opposing counsel are basically equitable arguments which are expressly excluded by the language of the statute of the administered review act. I don't know why they call it an act. Everything else is a statute. In the union's brief, they argue that the city does not have the ability to appeal because we have a law. It's a trap door. They did not appeal the merit board's decision. It's done. They could have had an arbitration that made a difference, but they did not preserve the issue by doing the deal required by statute. You mentioned that Mr. Moran was fired in 2010. The police chief did in fact fire him and the FOP put him back to work because the merit board was not used. We used the merit board this time. It's statutory that the merit board can terminate. They did. It isn't part of their statute that they can decide back wages, but they did and it wasn't appealed. It became final as well. The requirements of the administrative review law are mandatory. The requirements of the statute are mandatory. The union's brief seems to argue, as did the oral argument, for some reason not to follow the requirements of the statute for the appeal of the decision against Mr. Moran because they have another hearing. If a second hearing were to be held, it would only be valid if the union followed the merit board and administrative review law to preserve the issues that they claim to have arbitrated months later. In the absence of an appeal, no issues decided by the merit board were preserved and the absolutely final administrative order reached by the merit board became absolutely final 35 days after Mr. Moran was handed his written uh order from that board. Thank you. Thank you, counsel. We appreciate the briefs of arguments. Thank you.